## ERASTUS BASHAM, Respondent, v. HAMMOND PACKING COMPANY, Appellant.

### Kansas City Court of Appeals, June 20, 1904.

1. **JURIES: Special Venire: Timely Application: Divisions of Court.** Plaintiff's suit was set for trial in division number two of the Buchanan circuit court on the ninth, on which day it was transferred to division number one, in which division defendant filed an application for special *venire*. *Held*, the application was out of time and should have been made three days before the day the cause was docketed in division two, and the jury so summoned would have followed the cause into division one.

2. ———: ———: **Discretion of Court: Appellate Practice.** Where an application for special *venire* is not made in time, the granting thereof is a matter in the sound discretion of the trial court, with which the appellate court cannot interfere in the absence of manifest abuse.

3. **INSTRUCTIONS: Evidence.** An instruction relating to public feeling may with propriety be refused where there is no evidence on record to support it.

4. **MASTER AND SERVANT: Defective Appliances: General Negligence: Pre-existing Defect of Servant.** Where a master's negligence affects a duty owed alike to all servants, he is liable to one having a pre-existing defect who suffers injury from such negligence, though a servant of ordinary physical condition would not have been injured by the accident; and so a

servant afflicted with curvature of the spine and a tuberculosis diathesis whose lungs were congested by the falling of an elevator may recover for such injury though a person of sound lungs might not have been affected.

Appeal from Buchanan Circuit Court.—*Hon. A. M. Woodson,* Judge.

AFFIRMED.

*Johnson, Rusk & Stringfellow* for appellant.

(1) The motion for a special jury should have been sustained. It was filed more than three days before the day on which it was set for trial on the docket on which it was tried. The motion was filed June 10 and passed on June 11, and the case was set for trial and was actually tried on June 15. The fact that it had been previously set on the docket in the court from which the venue was changed should make no difference. State v. Leabo, 89 Mo. 247; State v. Withrow, 133 Mo. 514. (2) Instruction marked "W" asked by defendant should have been given. (3) Instruction 2 given for plaintiff is erroneous. (4) One who inflicts an injury without willfulness or malice is liable only for such consequences as would reasonably and naturally have been expected to result from his act, all the circumstances and surroundings considered. 8 Am. and Eng. Ency. Law, 601; Brink v. Railroad, 17 Mo. App. 177; Haile v. Railroad, 60 Fed. 557; Sharpe v. Powell, L. R., 7 C. P. 253.

*James & Norris* for respondent.

(1) The lower court rightly overruled appellant's motion for special jury. Laws 1889, p. 74. (2) It was not error for the lower court to refuse defendant's instruction marked "W." Feary v. Railway, 162 Mo. 97. (3) The court rightly gave instruction 2 asked by plain-

tiff.  Vosburg v. Putney, 56 N. W. 480; Railroad v.
Falvey, 4 N. W. 908; 2 Thomp. Neg., 1084; 3 Suth. Dam.,
714; Addison, Torts (3 Ed.), 5; Cooley, Torts, 70;
Davis v. Garret, 6 Bing. 716; Railroad v. Reaney, 42
Md. 117; Beauchamp v. Min. Co., 15 N. W. 65; Railway
v. Buck, 18 Am. Eng. R. Cas., 234; Fell v. Railroad, 44
Fed. 254; Elevator Co. v. Lippert, 63 Fed. 942; Allison
v. Railroad, 42 Ia. 274; Purcell v. Railway, 48 Minn.
134, 50 N. W. 1034; Railroad v. Moose, 83 Va. 827, 3
S. E. 796; McNamara v. Clintonville, 62 Wis. 207, 22
N. W. 472; Brown v. Railroad, 66 Mo. 588; Owens v.
Railroad, 95 Mo. l. c. 182, affirming Brown v. Railroad,
supra, and citing with approval, Allison v. Railroad,
supra.

SMITH, P. J.—Action to recover damages for in-
juries for negligence.  The petition alleged that the de-
fendant, an incorporated packing house  company,
owned and operated an elevator in its building several
stories high which was raised and lowered by the use
of a cable which for several weeks prior to the time of
the injury of which plaintiff complained had become
weak, insecure and in a dangerous condition, and likely
at any time during the operation of said elevator to
break and thus to precipitate said elevator down to the
basement of the building, and which was known to de-
fendant, or, by the exercise of ordinary care, could have
been known by it; that while plaintiff was in the em-
ployment of defendant in its business and in and about
said elevator, its foreman negligently ordered him to
ascend in said elevator from the basement of said build-
ing to the third story thereof to perform certain work
for defendant, and that the plaintiff while engaged in
obeying the said order of defendant's foreman, and
while in the exercise of due care, and without any knowl-
edge of the dangerous, defective and insecure condition
of said elevator, and while said elevator was ascending,
by reason of the breaking of said cable, suddenly fell

Basham v. Hammond Packing Co.

and struck the floor of said basement of said building and thereby caused a concussion of the lungs of plaintiff,'' etc. The answer was a general denial, to which was added the pleas of assumption of the risk and contributory negligence.

It is conceded that there was evidence introduced at the trial warranting the submission of the issue of negligence to the jury, and that there was also evidence that the plaintiff was in worse physical condition and poorer health after the accident than before, and to the contrary. The trial resulted in judgment for plaintiff and the defendant brought the case here by appeal and assigns several grounds for reversal of that judgment, the first of which is that, the trial court erred in its action refusing an order for a special venire on its motion.

By the act of March 13, 1889 (Session Acts 1889, page 14) the Twelfth judicial circuit was made to consist of the county of Buchanan and be composed of two judges and two divisions, numbered one and two; each judge to occupy separate rooms; the clerk to keep separate minutes and dockets for each division; each division of the court and each judge thereof to have power to entertain, hear and determine any application, or make any order in any cause pending in either one of the divisions; the clerk to apportion the cases from number one up and assign even numbers to division number one and odd numbers to division number two. Any cause pending in one division to be transferred to the other on stipulation of parties, or in pursuance of the understanding of the judges. Where a cause is transferred, the clerk of the division to which the transfer is ordered, to place it at the foot of the docket for that term. That statute (section 3796, Revised Statutes) provides that in counties where the circuit court is comprised of two or more divisions the juries selected for one division, when not engaged therein, may be used in the other with the consent of the judge of the

division from which they are taken. This action was brought in division number two of the court and was there docketed for trial on June 9; and on that day it was transferred to division number one. The defendant on the day of the transfer, or the next day thereafter, filed a motion in the latter division for a special venire, which was denied.

We think the motion was not timely made. The statute (section 3791, Revised Statutes) provides that either party shall be entitled as a matter of course to an order for a special venire on motion made therefor three days before that on which the case is set for trial. And it has been held that when this motion is so made the court has no discretion to refuse it. State v. Withrow, 133 Mo. l. c. 514.

It was the duty of the defendant to file its motion in division number two three days before that on which it was set for trial. If the motion had been so timely filed and the venire ordered and the cause transferred before it was reached for trial, the order for the venire would still have been effectual. The record and proceedings in the cause while in division number two would have been, as a matter of course, certified to division number one, along with the order of transfer. And when the venireman appeared before division number two, in obedience to the command of the writ, the judge of that division could have made an order for them to appear in division number one, to which the cause had been transferred. The two divisions compose but one court and the juries in the one may be used in the other so that the panel summoned for each division may be regarded as but one; and any ground of objection to either, or reasons for desiring a special jury, would be exactly the same as to both panels.

If the motion for a special venire is not made three days before a cause is docketed for trial but later on, as here, then the granting of the order becomes a matter in the discretion of the court with which we can not

interfere unless in a case of manifest abuse, of which we do not think this to be one.

The defendant's instruction "W," which was refused by the court, is quite similar to that given in Feary v. Railroad, 162 Mo. l. c. 97. No doubt it is the law, but nothing is seen in the facts and circumstances of this case as in State v. Talbott, 73 Mo. 347, making the giving of it proper. While it might without impropriety have been given, we can not see that its omission was prejudicial. There is nothing showing that any such public feeling in respect to the case existed as made it proper by this instruction to declare to the jury its duty.

The court at the request of plaintiff gave the following instructions:

"1. The court instructs the jury that if they believe from the evidence that the defendant on or about January 20, 1903, owned and operated a packinghouse plant in South St. Joseph consisting, among other things, of a large building several stories high and in which there was an elevator in the northwest portion thereof known as the northwestern elevator and extending from the basement to the top story of said plant, and that defendant at all said times operated the said elevator by its employees; that said elvator was operated by a rope used in raising and lowering the elevator in the operation of the same, and that said elevator was on or about January 20, 1903, in a weak and dangerous condition by reason of said rope being in a defective, weakened and insecure condition and likely at any time during the operation of the elevator to break and to drop the elevator from wherever it might be at the time down to the basement of said building, and had been in such dangerous condition for a sufficient length of time for defendant to have known or by ordinary care could have known the same in time to have repaired the elevator prior to the time of the accident, and that plaintiff on or about said January 20, 1903, was em-

ployed by defendant in its said business in and about said plant and elevator, and that while plaintiff was so in the employment of defendant and in and about its said business plaintiff was ascending in said elevator, and that while exercising due care and caution on his part and without knowledge or information at the time of such defective, dangerous and insecure condition of said elevator, and that when said elevator was ascending near to or about opposite the third floor of said building, said elevator, by reason of said rope breaking, if you believe it did break, from its weakened, insecure and dangerous condition aforesaid, suddenly fell down to the basement of said building, thereby throwing plaintiff with great force and violence against the floor of said elevator and thereby causing a concussion of plaintiff's lungs or otherwise injuring him, then you will find for plaintiff.

"2.    The court instructs the jury that if they believe from the evidence that defendant was guilty of negligence under plaintiff's instruction number one, and that plaintiff was injured by said negligence, then the jury are further instructed that although they may believe from the evidence that plaintiff may at the time of the accident have been suffering from the ill effects of a curvature of the spine or other physical condition, still, he is entitled to recover for the injuries so received by him from falling of said elevator, although a person well and sound might have suffered no ill effects therefrom."

The defendant contends that even though it did operate its elevator by means of a defective, insecure and unsafe cable, which was known to it and unknown to the plaintiff, and in consequence of which its elevator fell and injured plaintiff, yet it is not liable to the latter for the damages thereby caused because it used in connection with the operation of its elevator the most approved kind of safety device for an elevator of that kind and which was sufficiently safe to protect from in-

jury such of its employees as were not infirm or in an abnormal physical condition, and that such latter would not have been injured by the fall of the elevator had it not been that he was infirm in that he was afflicted with tuberculosis, curvature of the spine and other ailments.

There is a class of railway passenger carrier cases (Hanks v. Railroad, 60 Mo. App. 274; Deming v. Railroad, 80 Mo. App. 152; Yarnell v. Railroad, 113 Mo. 570) which hold that it is not the duty of the carrier's employees to assist passengers in getting on and off its conveyances in all cases. If egress or ingress is easy, assistance can not be claimed by the passenger as a matter of right. But when a passenger is blind, aged, sick or infirm, and known to the carrier to be so, he is entitled to more care and attention than one who is under no such disability as to time and assistance rendered in getting on or off the carrier's conveyance; or, in other words, the duty of the carrier in such cases must be performed with due regard to such apparent condition of the passenger. And while the principle established by this class of cases is relied on by defendant to exonerate it from liability to plaintiff for his injury, we are unable to perceive its applicability to a case of this kind where the servant is suing the master for damages resulting to the former from the neglect of a duty imposed by law upon the latter. The common law enjoins upon the master the duty to furnish the servant a reasonably safe place and reasonably safe appliances in and with which to perform the work required of him; and in default of the performance of this duty he is guilty of negligence. Wendall v. Railroad, 100 Mo. App. 556, and cases there referred to. It stands conceded that there was evidence adduced to sustain the allegation of negligence contained in the petition; that is to say, that the defendant neglected the performance of its duty to plaintiff in that it did not furnish him a safe place and safe appliances with which to perform the work required of him, and in consequence of which the

injury complained of resulted. If the plaintiff at the time of his injury was suffering from the ill effects of spinal curvature or other ailments, was he entitled to recover for his injuries although a person sound and well might not have suffered ill effects from the accident? If the ordinary and usual operation of the defendant's elevator was such while the plaintiff was engaged in the performance of the work thereon required of him as to aggravate his infirmatives, or, indeed, to cause the injuries complained of, there would be no liability, for a risk of that kind was assumed by him; but the injuries complained of resulted from the breaking of a defective cable which was not one of the risks assumed. In Mathews v. Railroad, 78 S. W. 272, it was said: "There was evidence which tended to prove that the plaintiff at the time of the coupling was suffering from certain female ailments and that the effect of the jolt occasioned by the coupling was to augment or aggravate such ailments. There was also some evidence tending to prove new and independent injuries were received in consequence of the jolt. . . . In authorizing a recovery for the aggravation or increase of the injuries it (the instruction) did not mislead the jury to the prejudice of the defendant, because whether the injuries consisted of an aggravation or increase of a pre-existing ailment or were new, could make no difference if either or both were caused by the negligent act of defendant, as alleged in the petition." In Owens v. Railroad, 95 Mo. l. c. 182, it was said: "If plaintiff was negligently pulled off the car she has the right to be compensated for all the injuries which she would not have sustained had due care been exercised. Invalids as well as persons in robust health are entitled to the exercise of the highest degree of care on the part of the common carrier. It is no answer to say that the injuries would not have occurred, or would not have been so great, had the passenger been in good health."

And a like statement of the rule is found in Brown

v. Railroad, 66 Mo. 588, Fleming v. Railroad, 89 Mo. App. 140, and Allison v. Railroad, 42 Iowa 274.

As said in a Minnesota case (Purcell v. Railroad, 48 Minn. 1. c. 139). "It may be that where a passenger without knowledge of the carrier is sick, feeble or disabled, the latter does not owe to him a higher degree of care than he owes passengers generally, and that the carrier would not be liable to him for an injury caused by an act or omission not negligent to an ordinary passenger. But when the act or omission is negligence as to any and all passengers, well or ill, any one injured by the negligence must be entitled to recover to the full extent of the injury so caused, without regard to whether, owing to his personal condition of health, he is more or less liable to injury." In a Texas case (Sawyer v. Dulany, 30 Tex. 479) the plaintiff, a pregnant woman, was injured by the negligent overturning of a stage coach in which she was traveling. The defendants contended that they were not responsible for injuries resulting from the peculiar condition of plaintiff, but only for such as would have ordinarily resulted to person not so circumstanced. But to this it was answered that carriers of passengers do not undertake to carry persons of strong constitutions only, and their liability depends not upon the physical ability of their passengers but upon their own conduct. And in a Pennsylvania case (Railroad v. Moose, 83 Pa. St. 827) where the facts were somewhat similar, it was said: The law did not require her to expect extraordinary events, but only the effects of the ordinary running of the road; nor did it require her to be in such bodily condition as to be able to withstand anything more than the effects of the usual and ordinary running of the cars. In Crane Elevator Co. v. Leppert, 63 Fed. 1. c. 948, it was said that it was contended on the oral argument that the injury sustained by the plaintiff was not the proximate result of his fall, but arose from the presence of tuberculosis germs in his system. "It was the hurt occasioned by the fall which

afforded an opportunity for the active development of the poisonous germs which had theretofore been innocuous. It was the wrongful act which gave rise to the consequent injury and it is not apparent that the injury would have occurred in the absence of such cause. . . . The wrongful act of defendant subjected the injured party to the other dependent causes which set in motion the original hurt. For that it is answerable."

In Fell v. Railway, 44 Fed. 248, it was said that, if the plaintiff had sustained physical injury by reason of the ejection, which became seriously aggravated by reason of the rupture, the defendant could not claim immunity for the aggravated result because it did not know the physical condition of the plaintiff—citing Railway v. Burk, 18 Am. and Eng. R. R. Cases, 234.

It is our conclusion that if the facts were as hypothesized in the plaintiff's first instruction, then the court did not err by giving the plaintiff's second, telling the jury to return a verdict for plaintiff for the injuries received by him from the falling of the elevator, even though it believed that at the time the injury happened the plaintiff was suffering from the ill effects of spinal curvature or other infirmities, and although it further believed a person well and sound would have suffered no ill effects from it; and this, too, without reference to whether or not the defendant knew of the plaintiff's physical condition at or previous to the time of the injury.

Accordingly, the judgment will be affirmed. All concur.