ALBERT A. WENDALL, Respondent, v. CHICAGO & ALTON RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, May 25, 1903.

1. **Master and Servant:** PLACE OF WORK: INSURER: RISK: RELIANCE. While the master is required to use diligence to furnish the servant a reasonably safe place to work, he is not an insurer of the servant's safety and is required to use only reasonable care and not to expose the servant to unknown risks not ordinarily incident to the employment, and to this extent the latter may rely on the master.

2. ———: ———: ———: ———: ———. On a review of the evidence relating to an injury received by an employee while walking on a platform by running a splinter into his foot, it is held insufficient to send the case to the jury.

3. ———: NEGLIGENCE: ACCIDENT. Where the master does nothing out of the usual course of business there is no negligence, and what happens out of the usual course while he is so pursuing his business, is an accident for which he is not liable.

Appeal from Jackson Circuit Court.—*Hon. James Gibson,* Judge.

REVERSED.

*Franklin Houston, T. B. Buckner* for appellant.

(1) The case should never have been submitted to the jury and the demurrer of the defendant at the close of the plaintiff's case and at the close of all of the evidence should have been given. The facts above given are practically undisputed. (2) Where the facts of a case are undisputed it is the duty of the court to declare whether or not the facts proven constitute negligence, and if in the opinion of the court the negligence of the defendant has not been shown, a demurrer to the evidence should be sustained. Rorer on Railroads, vol. 2, 1038 and 1039 and authorities there cited: Kelly v. Railroad, 11 Mo. App. 1; Yancy v. Railroad, 93 Mo. 433; Bell v. Railroad, 86 Mo. 599; Zimmerman v. Railroad, 71 Mo. 476; Living v. Railroad, 76 Mo. 68; Harris v. Railroad, 40 Mo. App. 255; Jackson v. Railroad, 104 Mo. 448; Hyde v. Railroad, 110 Mo. 272; Drake v. Railroad, 51 Mo. App. 562; Weaver v. Railroad, 60 Mo. App. 207; Webber v. Railroad, 106 Mo. 208.

*Frank P. Walsh* for respondent.

(1) The question of defendant's negligence under the facts of this case was for the jury. Doyle v. Trust Co., 140 Mo. 1; Huhn v. Railroad, 92 Mo. 440; Soeder v. Railroad, 100 Mo. 673; O'Mellia v. Railroad, 115 Mo. 205; Wendler v. Furnishing Co., 165 Mo. 527; Hamman v. Coal & Coke Co., 156 Mo. 232. (2) Plaintiff's knowledge of defective condition does not preclude recovery. Pauck v. Provision Co., 159 Mo. 477; Settle v. Railroad, 127 Mo. 336; Hamilton v. Mining Co., 108 Mo. 364; Bradley v. Railroad, 138 Mo. 306; Wendler v. Furn. Co., 165 Mo. 527; Devore v. Railroad, 86 Mo. App. 429; Huhn v. Railroad, 92 Mo. 440; Doyle v. Trust Co., 140 Mo. 1; O'Mellia v. Railroad, 115 Mo. 205; Soeder v. Railroad, 100 Mo. 673. (3) The question of contributory negligence in wearing the shoe in question was for the jury. (4) The injury was not due to an accident. McDermott v. Railroad, 87 Mo. 285; Wolf v. Ferry Co., 54 Hun 67.

SMITH, P. J.—The defendant is an incorporated railway company which had and maintained in its yard at Kansas City a track known as "Number 7 Track" and abutting against it on the north side for a distance of about 300 feet was a plank platform, the width of which was about nine feet. On the other side of the platform were two small buildings about twenty-five feet apart, which extended up to and opened upon it. In one was a hydrant where the employees performed their ablutions, after which they went into the other where there were lockers in which they kept their clothes.

The platform had been constructed three or four months previous to the accident out of three by ten inch yellow plank laid down longitudinally and was uncovered. It was built for the benefit of the coach cleaners and car repairers who cleaned coaches from it. It was also used to run wheelbarrows and trucks over in hauling ice and coal, and in jacking up cars, etc. Both as to material and structure it conformed to that which was usual and customary among railroads. At the time of the accident the upper surface of the platform was in a more or less splintery condition—a condition brought into existence by exposure to meteorological vicissitudes and the constant trundling done over it.

The plaintiff at the time he was hurt had been in the employ of the defendant in the capacity of car cleaner for upwards of a month. One of the duties of his employment was to daily sweep off the platform, and while in the performance of this duty he noticed that the splinters or loose fibers on the rough plank "caught pieces of waste." One day after he had finished his work and had "washed up" in the hydrant room, and while walking over the platform on his way to the building in which his street clothes were kept, his right foot came in contact with the sharp end of a splinter five or six inches long and about a half inch wide projecting from the surface of a plank in the

platform, which penetrated through the sole of his shoe into the bottom of his foot, well forward, passing upward about two inches. The wound thus inflicted was very serious, requiring several months medical and surgical attention. He was greatly disabled and had not entirely recovered at the time of the trial. The shoe worn by him at the time of the injury was double-soled, the outer one having been worn through under the ball of the big toe where the splinter penetrated.

The foregoing is a statement of the salient facts of the case as disclosed by the evidence, to which the defendant interposed a demurrer. The decisive question thus raised is whether or not the plaintiff made out a prima facie case entitling him to go to the jury.

Undoubtedly, the law enjoins upon the employer the duty to furnish the employee in his service a reasonably safe place in which to perform the work assigned to him, and in default of the performance of this duty he is guilty of negligence. As to what is a reasonably safe place to work, where the evidence relating thereto is conflicting, the case is one for the consideration of the jury; but where the evidence is undisputed, or all tends the same way, then it is a question solely for the court. Smith v. Coal Co., 75 Mo. App. 177, and cases cited in defendant's brief.

What is meant by a safe place which the employer is required to furnish his employee to work in or about is not the obvious or patent safety or unsafety of such place, because in the nature of things many kinds of labor have to be performed under conditions relatively unsafe and often dangerous. Fugler v. Bothe, 117 Mo. l. c. 500.

The employer is not an insurer to the employee of the safety of the appliance with, or the place in, which the latter is required to perform the work required of him. Nor is he responsible for not providing against all possible and unanticipated happenings. Marshall v. Hay Press Co., 69 Mo. App. l. c. 260; Glover v. Bolt

& Nut Co., 153 Mo. 327. He is not required to provide a place that shall be safe under all possible circumstances. Turner v. Haar, 114 Mo. 335. It is a part of his duty to use ordinary care to furnish a place in which to work which is reasonably safe so far as the nature of the employment permits and not to expose the employee to any unknown risks not ordinarily incident to the employment. Dayharsh v. Railroad, 103 Mo. 570. And the employee has a right to rely on the performance of this duty by his employer. Street Car Line v. Bonander, 97 Ill. App. 601.

Now, looking at the facts of the case as we have stated them to be in the light of the principles to which we have just adverted, and what ought to be our conclusion? Has the defendant been guilty of any breach of duty which he owed the plaintiff, and if so in what? It may be conceded that the duty of the defendant to provide a reasonably safe place in which the plaintiff was to perform his work extended to the platform over which the latter was walking when injured. Heldmaier v. Cobbs, 96 Ill. App. 315.

The defendant's duty to the plaintiff required, as we have seen, no more of him than that he furnish a reasonably safe place in which to do the work assigned to him. And as the platform may be regarded as one of the places in which the plaintiff was obliged to go in performing the duties of his employment, and for the reasonable safety of which the defendant was responsible, the question narrows itself down to whether or not it was reasonably safe, regard being had for the use to which it was put. It was of the usual and customary material and construction of platforms used for similar purposes. It was comparatively new. No defect or imperfection is shown to have existed in it unless it be the splinters that had been developed on the surface of the plank therein by the action of the weather and the ordinary use to which it had been subjected. If the plank therein had been new and laid down the

Wendall v. C. & A. Ry. Co.

day before the accident it could not have been safer except as to the splintery condition. The accident which happened to plaintiff could not have been reasonably foreseen or anticipated and surely no duty of the defendant required him to provide against it because that would be most unreasonable indeed.

If the plaintiff had complained that the splintery condition of the platform rendered it unsafe, what could the defendant have done to obviate that condition? It is true that it could have taken up the old plank and laid down new ones in their stead, but was it required to do that, since the platform was already reasonably safe for the use to which it was subjected? This would have imposed on it the duty to have made it safe under all circumstances—a duty which the law does not require. If the defendant was required to do this, then it became an insurer to the plaintiff of its absolute safety.

It may have been that had the plank been laid transversely rather than longitudinally that the risk of the danger to be apprehended from splinters would have been less, but the fact that the platform could in that way have been made safer does not establish that it was not reasonably safe and fit for its designed use. Berning v. Medart, 56 Mo. App. 443; Higgins v. Railroad, 43 Mo. App. 547; Friel v. Railroad, 115 Mo. 503. To hold that it was a duty the defendant owed its employees to tear up this structure on account alone of the splinters that had been produced on its surface and replace it with a new one in order to avoid liability in a case of this kind is, we think, going too far. Before the plaintiff is entitled to recover we must hold that it was a duty the defendant owed him to furnish him a platform which was not only reasonably safe but absolutely so; and this we are not authorized to do.

It is well settled that negligence can not be presumed where nothing is done out of the usual course of

Vol 100 app—36

business, unless the course is improper.   There must be some special circumstance calling for more particular care.   Nothing is shown indicating any act or omission not incident to the constant use of the platform, or indicating fault.   When something unusual occurs which injures an employee, but such unusual occurrence is not even inferentially the result of an unusual act, and the employer has, so far as he is concerned, been pursuing his usual course which had theretofore been done in safety, then the unusual occurrence is what is called an accident.   From the facts, the warp and woof of this case, it appears that the happening of the plaintiff's injury can not be attributed to any fault or breach of duty of the defendant, and it was therefore but an accident for which the defendant can not be held liable. Saxton v. Railroad, 72 S. W. 717; Whitaker's Smith on Neg. 524 (2 Am. Ed.); Shearman & Redf, secs. 15-16; Anderson's Law Dict. 12; Buswell on Per. Inj., sec. 111.

As has already been stated, the material facts of the case were uncontroverted, and it was therefore one for the court and not for a jury.   As was said by the very able and learned judge—"the latchet of whose shoes I am not worthy to unloose"—in the course of his dissenting opinion in Fugler v. Bothe, ante, which was approved by the Supreme Court and has become a leading negligence case in this State: "It is a matter of daily experience of which many courts have even taken judicial notice, that the submission of a case of this class to the jury, always leads to the same result. To relieve the distress of others is a commendable impulse which juries are but apt to follow, although they must necessarily do it at the expense of others. · They are apt to forget that Judicial Charity under the guise of law and at the expense of others, is but an act of licensed oppression."

In our opinion the trial court erred in denying the defendant's demurrer to the evidence, and accordingly the judgment must be reversed.   All concur.